UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

IN RE SEPTEMBER 11 LITIGATION        :    21 MC 101 (AKH)

------------------------------------------------------------ :

WORLD TRADE CENTER PROPERTIES LLC, et  :
al.,                                                    :

                           Plaintiffs,      :    08 CIV 3719 (AKH)

                           v.                             :

UNITED AIRLINES, INC., et al.,              :

                         Defendants.      :

------------------------------------------------------------ :

WORLD TRADE CENTER PROPERTIES LLC, et  :
al.,                                                    :

                           Plaintiffs,      :    08 CIV 3722 (AKH)

                            v.                             :

AMERICAN AIRLINES, INC., et al.,         :

                         Defendants.      :

------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO TIG INSURANCE COMPANY'S MOTION TO INTERVENE

Richard A. Williamson, Esq.
James B. Eisenberg, Esq.
FLEMMING ZULACK
WILLIAMSON ZAUDERER LLP
One Liberty Plaza
New York, New York 10006
(212) 412-9500
Attorneys for the WTCP Plaintiffs
   and 7 World Trade Company, L.P.

## TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ...................................................................1

    Why TIG's Motion To Intervene Should Be Denied ...............................................1

ARGUMENT...................................................................................................4

    TIG IS NOT ENTITLED TO INTERVENE, EITHER AS OF
    RIGHT OR BY PERMISSION, IN THE WTCP PLAINTIFFS'
    AND 7 WTC'S LAWSUITS ....................................................................4

        Statement Of Facts...............................................................................4

        I.       TIG Is Not Entitled To Intervene As Of Right .............................5

                TIG Is Not A Necessary Party To The WTCP
                Plaintiffs' and 7 WTC's Lawsuits.....................................5

                TIG's Motion To Intervene Is Untimely..........................7

        II.     TIG Should Not Be Granted Permission To Intervene...............10

CONCLUSION.................................................................................................11

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                          <u>Page(s)</u>

*Berry v. St. Peter's Hosp.*,
    250 A.D.2d 63, 678 N.Y.S.2d 674 (3d Dep't 1998).................................................. 7, 8

*Butler, Fitzgerald & Potter v. Sequa Corp.*,
    250 F.3d 171 (2d Cir. 2001)........................................................................................ 8

*Fasso v. Doerr*,
    12 N.Y.3d 80, 875 N.Y.S.2d 846, 903 N.E.2d 1167 (2009).................................... 9

*Fleming v. Lind-Waldock & Co.*,
    922 F.2d 20 (1st Cir. 1990)........................................................................................ 9

*Humbach v. Goldstein*,
    229 A.D.2d 64, 653 N.Y.S.2d 950 (2d Dep't 1997)................................................. 8

*In re Holocaust Victims Asset Litig.*,
    225 F.3d 191 (2d Cir. 2000)....................................................................................... 9

*In re September 11 Litig.*,
    649 F. Supp. 2d 171 (S.D.N.Y. 2009)...................................................................... 6

*In re September 11th Litig.*,
    590 F. Supp. 2d 535 (S.D.N.Y. 2008)...................................................................... 6

*In re September 11 Litig.*,
    --F. Supp. 2d--, 2010 WL 2628642 (S.D.N.Y. July 1, 2010) ...................................... 2

*Kaiser v. Metro. Transit Auth.*,
    171 Misc. 2d 273, 653 N.Y.S.2d 535 (Sup. Ct. Suffolk Co. 1996) ........................ 9-10

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n Inc.*,
    471 F.3d 377 (2d Cir. 2006)....................................................................................... 5, 6

*NAACP v. New York*,
    413 U.S. 345 (1973)......................................................................... ...............7

*United States v. New York*,
    820 F.2d 554 (2d Cir. 1987)....................................................................................... 7

## **TABLE OF AUTHORITIES**

<u>Statutes</u>                                                                                  <u>Page(s)</u>

Fed. R. Civ. P. 19(a) ............................................................................................... 2, 5

Fed. R. Civ. P. 19(a)(1)(B)(i) ...................................................................................... 6

Fed. R. Civ. P. 24(a) .................................................................................................... 5

Fed. R. Civ. P. 24(b)(3) .......................................................................................... 3, 10

Rule 19(a)(1) ................................................................................................................ 5

## PRELIMINARY STATEMENT

Plaintiffs World Trade Center Properties LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC (formerly known as 5 World Trade Center LLC), 4 World Trade Center LLC (collectively referred to as the "WTCP Plaintiffs"), and 7 World Trade Company, L.P. ("7 WTC") in the above-captioned actions, by their attorneys Flemming Zulack Williamson Zauderer LLP, respectfully submit this memorandum of law and the accompanying Affidavit of Richard A. Williamson In Opposition To Motion To Intervene, sworn on August 31, 2010 ("Williamson Aff."), in opposition to the motion of TIG Insurance Company ("TIG") to intervene in the two above-captioned actions (08 Civ. 3719 (AKH) and 08 Civ. 3722 (AKH)) pursuant to Federal Rule of Civil Procedure 24(a)(2) as of right, or alternatively, Rule 24(b)(1)(B) by permission of this Court.

### Why TIG's Motion To Intervene Should Be Denied

Almost nine years ago terrorists hijacked two aircraft and intentionally crashed them into World Trade Center buildings, killing thousands of people and destroying the buildings in which space had been leased by the WTCP Plaintiffs and 7 WTC.  Almost six years ago, the WTCP Plaintiffs and 7 WTC filed claims pursuant to the Air Transportation Safety and System Stabilization Act, as amended, codified at 49 U.S.C. § 40101 note ("ATSSSA") against the airlines, aircraft manufacturer, airport operators, and security companies (the "Aviation Defendants") whose tortious conduct enabled the terrorists' criminal plan to succeed.  TIG, after paying approximately $18.2 million to the WTCP Plaintiffs under a property insurance policy, closed the file without attempting to

enforce any right of subrogation.  (TIG did not make any property damage insurance payments to 7 WTC.)

Now, TIG, shortly after the settlement of subrogation claims timely filed by other insurance companies was disclosed, *see In re September 11 Litig.*, -- F.Supp.2d --, 2010 WL 2628642 (S.D.N.Y. July 1, 2010), seeks to resurrect its subrogation claim, which TIG admits is barred by the statute of limitations, by intervening in the WTCP Plaintiffs' and 7 WTC's timely filed lawsuits against the Aviation Defendants so that TIG's subrogation claim can "relate back" to the date of the filing of their lawsuits.

TIG's motion to intervene as of right must be denied, as a matter of law, for two reasons.  First, TIG is not a necessary party under Fed. R. Civ. P. 19(a) to these lawsuits and, as such, may not intervene as of right.  Second, TIG's motion to intervene as of right must be denied because it is untimely and, if granted, will unduly delay and prejudice the adjudication of these lawsuits.

TIG has known for years about the WTCP Plaintiffs' and 7 WTC's well-publicized lawsuits since TIG's counsel, Louis Corsi, Esq. of Landman Corsi Ballaine & Ford P.C., has attended numerous court conferences and oral arguments in the 9/11 litigation in the last decade.  Therefore, TIG knew it could have timely filed its own subrogation lawsuits, as did all of the insurers which are part of the Settling Plaintiffs (or moved to intervene, if at all, promptly after the lawsuits were filed, not six years later), if it wanted to.  Furthermore, moving to intervene at the eleventh hour will inevitably and inequitably delay the resolution of these lawsuits.

TIG admits that the prosecution of these lawsuits will be delayed by its intervention because additional damages discovery will be needed.  Although TIG

speculates that it would not need further discovery with respect to liability, that speculation would certainly be proved incorrect if TIG's new attorneys, after intervention were allowed, decided that the liability discovery to date required supplementation. *See* TIG's Memorandum of Law in Support of Motion to Intervene, dated August 19, 2010 ("TIG Memo") at 8.  TIG's intervention also would inevitably complicate, and possibly fatally disrupt, the WTCP Plaintiffs' efforts to complete their litigation with the Aviation Defendants.  For example, further delay and prejudice will occur if TIG intervenes because two parallel trials would be required to avoid confusing the jury adjudicating the WTCP Plaintiffs' claims, which might erroneously assume that the real party in interest is not the WTCP Plaintiffs, but an insurance company.

TIG's motion to intervene by permission of this Court must likewise be denied because of the delay and prejudice that the WTCP Plaintiffs would suffer if TIG were allowed to intervene.  Fed. R. Civ. P. 24(b)(3) states that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  If permissive intervention were granted to TIG, the WTCP Plaintiffs would not only suffer the delay and prejudice caused by TIG's eleventh hour intervention, but would inevitably suffer the delay and prejudice caused by the copycat intervention of every other insurance company seeking belatedly to resurrect time-barred subrogation claims.  In short, granting TIG's motion will open the floodgates to numerous additional motions to intervene.

For these reasons, and the points below, the WTCP Plaintiffs urge that TIG's motion to intervene be denied.

3

## ARGUMENT

## TIG IS NOT ENTITLED TO INTERVENE, EITHER AS OF RIGHT OR BY PERMISSION, IN THE WTCP PLAINTIFFS' AND 7 WTC'S LAWSUITS

### Statement Of Facts

TIG acknowledges that it could have filed its subrogation claim as a separate lawsuit before the statute of limitations expired. *See* TIG Memo at 6. Instead, TIG (like many other insurer subrogees) chose not to do so. TIG closed the file for "the claims made by the WTCP Plaintiffs on the policy issued by TIG" and "TIG went into 'run-off'; that is, ceased writing policies of insurance." *See* Declaration of Charles G. Ehrlich, dated August 18, 2010 ("Ehrlich Aff.") at ¶¶ 7-9.

In March 2009, the "closed" "WTCP Plaintiff's claim file" was transferred to "RiverStone" in Manchester, New Hampshire because "the TIG claims office in Chicago, Illinois was closed." Ehrlich Aff. at ¶ 9. In 2010, RiverStone got around to reviewing the closed claim file and supposedly discovered that TIG had not timely "advanced a subrogation claim." *Id.* at ¶ 10. RiverStone now seeks to resurrect TIG's subrogation claim, abandoned years ago by TIG's Chicago office, and now barred by the statute of limitations, by intervening at the eleventh hour in these lawsuits so that TIG's resurrected claim can "relate back" to the timely filing of these lawsuits and "prevent a statute of limitations bar." *See* TIG Memo at 6.

TIG argues that it is entitled to such intervention as of right or by permission of this Court because such intervention is supported by the factors that must be evaluated by this Court in deciding a motion to intervene, and because the WTCP Plaintiffs and 7 WTC will suffer no harm if TIG's motion to intervene is granted. TIG Memo at 1.

In fact, as we now show, TIG has not satisfied the factors prerequisite to the granting of an order of intervention as of right or by permission, and most importantly, has not established (other than by an unsupported conclusory allegation) that such intervention, if granted, will not adversely delay and prejudice the timely adjudication of these lawsuits.

## I.    TIG Is Not Entitled To Intervene As Of Right

Fed. R. Civ. P. 24(a) provides that "[o]n timely motion, the court must permit anyone to intervene who: . . . (2) claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  We now show that TIG's motion to intervene as of right must be denied on two independent grounds:  (1) TIG is not a necessary party to these lawsuits; and (2) TIG's motion to intervene is untimely and will delay and prejudice the successful resolution of the claims in these lawsuits.

### TIG Is Not A Necessary Party To The WTCP Plaintiffs' and 7 WTC's Lawsuits

Even assuming that TIG's motion was timely, which it is not, "if a party is not 'necessary' under Rule 19(a), then it cannot satisfy the test for intervention as of right under Rule 24(a)(2))." *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n Inc.,* 471 F.3d 377, 389-90 (2d Cir. 2006).  A party is necessary under Rule 19(a)(1) only if in that party's absence "complete relief cannot [be] accord[ed] among existing parties." *Id.* (citing Fed. R. Civ. P. 19(a)(1)(A)).  Clearly, TIG is not a necessary party in the above-captioned actions under this standard since complete relief can be granted between the WTCP Plaintiffs and the Aviation Defendants without TIG.

5

Nor is TIG a necessary party to these lawsuits under Fed. R. Civ. P. 19(a)(1)(B) because its "ability to protect its interest will not be impaired or impeded *because* it is denied intervention in this case." *Id.* at 390 (emphasis added). To the extent that TIG's ability to protect its interests has been impaired or impeded, such inability has been caused solely by TIG's own decision to close its claim file rather than to timely file a separate, independent subrogation action before the statute of limitations expired. *See In re September 11 Litig.*, 649 F. Supp. 2d 171, 177-78 (S.D.N.Y. 2009) (insurer may proceed directly to enforce its subrogation right against tortfeasor to recoup amount paid to insured for loss; insurer takes its subrogation rights as they existed at time of, and not after, collateral source payment).

Furthermore, TIG admits that the WTCP Plaintiffs are seeking damages in their lawsuits only for their uninsured losses. According to TIG, the WTCP Plaintiffs and 7 WTC "have no incentive to seek recovery of the amounts paid them by TIG." *See* TIG Memo at 8-9. Indeed, it is clear that any monies paid by the Aviation Defendants to settle these lawsuits, or paid by them for a judgment entered after trial will be limited to the WTCP Plaintiffs' and 7 WTC's uninsured losses. *See In re September 11th Litig.*, 590 F. Supp. 2d 535 (S.D.N.Y. 2008). Consequently, TIG cannot be a necessary party to these lawsuits, when these lawsuits are not seeking any damages for amounts paid by TIG. In short, "as a practical matter," TIG's absence from the above-captioned lawsuits cannot "impair or impede [TIG's] ability to protect [its] interest." Fed. R. Civ. P. 19(a)(1)(B)(i).

**TIG's Motion To Intervene Is Untimely**

Whether a motion to intervene is "timely" requires evaluation of the following four factors: (1) the length of time the petitioner knew or should have known of its interest before making the motion; (2) prejudice to existing parties resulting from applicant's delay; (3) prejudice to applicant if motion is denied; and (4) unusual circumstances militating for or against timeliness. *United States v. New York*, 820 F.2d 554, 557-58 (2d Cir. 1987); *NAACP v. New York*, 413 U.S. 345 (1973) (denial of motion to intervene proper because motion was untimely).

TIG avers that it paid $18.2 million to the WTCP Plaintiffs for property damage arising from the September 11th total destruction of four World Trade Center buildings in which space was leased by them. Ehrlich Aff at ¶ 6. TIG knew about the above-captioned lawsuits since they were filed in 2004 because Louis Corsi, Esq., of Landman Corsi Ballaine & Ford P.C., attended numerous oral arguments and court conferences before and after these cases were filed. *See* Williamson Aff. at ¶ 2. Even if Mr. Corsi had not been monitoring this docket, these lawsuits have been a constant topic of media coverage. Thus, TIG simply chose (as did many other insurers) not to file a subrogation lawsuit.

In other words, TIG is not in the situation of an insurer that, having paid substantial claims to its insured, learns years later of a pending lawsuit in an obscure court where the insured is seeking compensation for its losses. Even in this situation, moreover, courts will deny motions to intervene where, as here, the plaintiff is suing for uninsured losses. *Berry v. St. Peter's Hosp.*, 250 A.D.2d 63, 67, 678 N.Y.S.2d 674, 677 (3d Dep't 1998) ("public interest in assuring the integrity of the relations between

insurers and their insureds requires that even the potential for conflict of interest in these situations be avoided and militates against allowing an insurer to, directly or indirectly, place its own interests above those of its insured" by intervening in the insured's lawsuit). The intervention of insurance companies into lawsuits filed by the insured creates an adversarial relationship between them which is "antithetical to the fundamental nature of the relationship between an insured and his or her insurer." *Id.; see also Humbach v. Goldstein*, 229 A.D.2d 64, 68, 653 N.Y.S.2d 950, 952-53 (2d Dep't 1997) (intervention denied).

Moreover, contrary to TIG's position that a long delay to move to intervene is not, by itself, sufficiently prejudicial to warrant denial of a motion to intervene (*see* TIG Memo at 6-7), when, as here, that motion is filed at the eleventh hour, courts should deny the motion as untimely simply because further delay would likely occur.  For example, in *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182-83 (2d Cir. 2001), the Court affirmed the district court's denial of a motion to intervene based on untimeliness even though "the prejudice to existing parties resulting from the movant's delay, is only minimally implicated by the instant motion" to intervene.  The Second Circuit concluded that in a "nearly nine-year-old litigation . . . allowing [a party] to intervene, at what the district court called the 'eleventh hour,' would cause more delay." *Id.* at 183. Here, as in *Butler*, TIG seeks to intervene almost nine years after the events of September 11th, at the "eleventh hour," and, as in *Butler*, TIG's motion should be denied in order to avoid causing further delay.

Nor does the possibility that TIG now might be barred by the statute of limitations from initiating its own independent subrogation lawsuit justify granting TIG's motion to

intervene.  To the contrary, the fact that granting TIG's motion to intervene would "circumvent the statute of limitations" by allowing TIG's untimely claim to relate back to the timely filed claims in these lawsuits is a factor that weighs against granting TIG's motion to intervene.  *See Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 26 (1st Cir. 1990) (investor not entitled to intervene more than five years after actions were commenced because intervention would have circumvented statute of limitations).  TIG's "'last gasp' attempt" to evade the consequences of its delay should be rejected.  *Id.*

Furthermore, the WTCP Plaintiffs would suffer actual prejudice if TIG's motion to intervene were granted.  The New York Court of Appeals has held that "intervention can create an adversarial posture between a plaintiff/insured and its insurer because neither has an incentive to consider the interests of the other." *Fasso v. Doerr*, 12 N.Y.3d 80, 89-90, 875 N.Y.S.2d 846, 851, 903 N.E.2d 1167, 1172 (2009) (citations omitted). Furthermore, if there ever could be a settlement in the cases at bar, TIG's intervention in the above-captioned lawsuits would lessen that possibility because "the insurer's objective is to reclaim as much of the money it paid as possible regardless of whether its insured has a desire to settle the case rather than proceed to trial. *Thus, allowing an insurer to intervene inevitably complicates settlement negotiations.*" *Id.* (emphasis added); *see also In re Holocaust Victims Asset Litig.*, 225 F.3d 191, 198-99 (2d Cir. 2000) (permitting late intervention would have prejudiced existing parties by destroying the possibility of a settlement).

Moreover, if these lawsuits proceeded to trial with TIG as an intervening plaintiff, the WTCP Plaintiffs would suffer further prejudice.  "To permit intervention where the [intervenor's] claim relates solely to pretrial reimbursed expenses subject to the collateral

9

source rule, would be to burden a trial with issues which cannot properly be brought before a jury and would require almost two simultaneous trials, one with the jury and one without." *Kaiser v. Metro. Transit Auth.*, 171 Misc. 2d 273, 276-77, 653 N.Y.S.2d 535, 537 (Sup. Ct. Suffolk Co. 1996).

In sum, TIG's motion to intervene as of right must be denied on two independent grounds. TIG is not a necessary party to these actions, and the WTCP Plaintiffs will suffer delay and prejudice to the successful resolution of their claims if TIG is allowed to intervene.

## II.   TIG Should Not Be Granted Permission To Intervene

TIG's motion to intervene by permission of this Court should likewise be denied because of the delay and prejudice that the WTCP Plaintiffs would suffer if TIG were allowed to intervene. The delay and prejudice to the WTCP Plaintiffs, discussed above, remains exactly the same whether TIG intervenes as of right or by permission of this Court. Fed. R. Civ. P. 24(b)(3) requires that this Court "[i]n exercising its discretion, . . . must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."

If TIG were allowed to intervene despite the delay and prejudice to the WTCP Plaintiffs, detailed above, TIG's intervention would constitute an open call to all those insurance companies with subrogation claims that are barred by the statute of limitations to likewise move to intervene. The aggregate sum of those abandoned subrogation claims exceeds one billion dollars. *See* Williamson Aff. at ¶ 5.

For this reason alone, as well as for the delay and prejudice to the WTCP Plaintiffs detailed above, TIG should not be granted permission to intervene.

## CONCLUSION

TIG was a sophisticated insurance company that made decisions every day as to whether it made economic sense to enforce its subrogation rights in one case after another. In the case of TIG's $18.2 million dollar payment to the WTCP Plaintiffs, TIG made a decision that seemed economically reasonable at the time to close the file and to abandon its subrogation claim.

Insurers do that often. Now, after other insurance companies have proven that there is money to be had from the Aviation Defendants in settlement of subrogation claims, TIG wants to do an end-run around the statute of limitations bar and intervene by piggybacking upon the tens of millions of dollars spent during the last six years by the WTCP Plaintiffs in pursuing their ATSSSA claims against the Aviation Defendants. Such intervention will only delay and prejudice the successful resolution of the WTCP Plaintiffs' claims. TIG's argument in favor of granting intervention is based upon nothing more than its false premise that there could not possibly be any harm or foul to the WTCP Plaintiffs by allowing TIG to intervene. The facts and the law show exactly the opposite. Therefore, TIG's motion to intervene as of right or by permission should be denied.

11

Dated: New York, New York
        August 31, 2010

                      FLEMMING ZULACK WILLIAMSON
                      ZAUDERER LLP

                      By: _____
                           Richard A. Williamson, Esq.
                      One Liberty Plaza
                      New York, New York 10006-1404
                      (212) 412-9500
                      rwilliamson@fzwz.com

                      Attorneys for WTCP Plaintiffs and
                        and 7 World Trade Company, L.P.

359340