USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/3/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x

IN RE SEPTEMBER 11 LITIGATION : 21 MC 101 (AKH)

**OPINION AND ORDER**
**DENYING MOTION TO**
WORLD TRADE CENTER PROPERTIES LLC et al., : **CREDIT INSURANCE**
**RECOVERIES AGAINST**
Plaintiffs, : **POTENTIAL TORT**
**RECOVERIES**
-against-
: 08 Civ. 3722 (AKH)

AMERICAN AIRLINES, INC. et al.,

Defendants.

------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

I.   **INTRODUCTION**

On December 31, 1980, the Port Authority of New York and New Jersey (the "Port Authority") entered into a ground lease with 7 World Trade Company, L.P. ("7WTCo.") for the development and construction of 7 World Trade Center ("Tower 7"). Upon its completion in 1987, the Port Authority leased Tower 7 to 7WTCo. for a period of 99 years.

On September 11, 2001, terrorists hijacked American Airlines Flight 11 and crashed it into the 110-story 1 World Trade Center, the northern Twin Tower. As 1 World Trade Center collapsed, it spewed debris, some of which pierced the façade of Tower 7, causing fires and, eventually, Tower 7's collapse.[1] As a result of Tower 7's destruction, 7WTCo. recovered approximately $831 million from its insurer, Industrial Risk Insurers ("IRI").

---

[1] For a detailed account of Tower 7's collapse, see Aegis Ins. Servs., Inc. v. 7 World Trade Co., 2011 WL 4433158 (S.D.N.Y. Sept. 23, 2011), appeal docketed, No. 11-4403 (2d Cir. Oct. 24, 2011).

1

7WTCo. has sued United Airlines, American Airlines and others (collectively, "Aviation Defendants"), alleging that Tower 7 would not have been destroyed but for Aviation Defendants' negligence. Aviation Defendants now move for summary judgment on the basis of collateral setoff pursuant to N.Y. C.P.L.R. § 4545, alleging that 7WTCo.'s insurance recovery has fully compensated it for any possible tort recovery against Aviation Defendants.[2]

Collateral setoff requires correspondence between categories of insurance recovery and categories of tort damage. Because correspondence presents issues of material fact requiring trial, I deny the motion.

## II.  BACKGROUND

### a.  7WTCo.'s Insurance Coverage and Recovery

Pursuant to its lease, 7WTCo. agreed that in the event Tower 7 was damaged or destroyed, 7WTCo. would "rebuild, restore, repair and replace [Tower 7] . . . in accordance with the plans and specifications for the same as they existed prior to such damage or destruction or with the consent in writing of the Port Authority make sure other repairs, replacements, changes or alterations as is mutually agreed to by the Port Authority and [7WTCo.]."[3] 7 World Trade Center Lease and Amendment to Lease § 14.1. 7WTCo. also agreed to procure certain insurance for Tower 7. See id. at §13. 7WTCo. agreed to insure Tower 7 against property damage to "not less than ninety percent (90%) of the . . . 'full insurable value' [of] the Tower Building and all structures, improvements, fixtures and equipment, furnishings and physical property now or in the future located on or a part of the premises," with "full insurable value being the cost of

---

[2] This motion is made by Aviation Defendants American Airlines, Inc., AMR Corp., United Air Lines, Inc., United Continental Holdings, Inc., Continental Airlines, Inc., US Airways, Inc., US Airways Group, Inc., Colgan Air, Inc., Delta Air Lines, Inc., Globe Aviation Services Corp., Globe Airport Security Services, Inc., Huntleigh USA Corp., The Boeing Co. and Massachusetts Port Authority. As their separate motion for summary judgment was granted, however, United Continental Holdings, Inc. and United Airlines, Inc. have been dismissed from the case. In re Sept. 11 Litig., 21 MC 101, 2012 WL 5870143 (S.D.N.Y. Nov. 21, 2012).

[3] A different "rebuild, restore, repair and replace" obligation applies during the final five years of the lease. See id. at § 14.1.1.

2

replacing the Tower Building and of said structures, improvements, fixtures, equipment, furnishing and physical property." Id. at § 13.1.1. 7WTCo. also agreed to continue making lease payments even if Tower 7 were damaged or destroyed and to procure "[r]ent insurance covering loss of rents, fees and other revenues of the Lessee during the period when the Tower Building or a portion thereof is out of operation."[4] Id. at §§ 13.1.4, 4.1.1.

After September 11, 7WTCo. submitted claims to IRI for damage resulting from the destruction of Tower 7. On January 3, 2005, 7WTCo. and IRI entered into a settlement pursuant to which IRI paid 7WTCo. $819 million and the parties agreed to share the net proceeds of their separate litigations against Aviation Defendants, with 90.2% of the net proceeds allocated to IRI and 9.8% of the proceeds allocated to 7WTCo. On December 2, 2011, 7WTCo. and IRI entered into a second settlement agreement whereby they agreed that IRI's Tower 7 subrogation recovery from Aviation Defendants was $121,801,880.40 and that 7WTCo. was entitled to 9.8%, or $11,936,584.28. Thus 7WTCo.'s total insurance recovery is $830,936,584.28.[5]

   b. 7WTCo.'s Damages

7WTCo. alleges that the diminution in the fair market value of its leasehold resulting from the destruction of Tower 7 is $959 million, plus prejudgment interest. Its expert, Kerry Vandell, Ph.D., using a discounted cash flow analysis, determined that immediately prior to Tower 7's destruction, the leasehold was worth $737 million, and that its value following Tower 7's destruction was negative $222 million. Vandell determined the post-destruction value

---

[4] 7WTCo.'s lease payments decrease during such a period. See id. at § 5.
[5] 7WTCo. contends that the payment it received pursuant to the second settlement agreement does not constitute a recovery from IRI because the payment resulted from IRI's recovery (as subrogee of 7WTCo.) from Aviation Defendants. However, IRI made the payment to 7WTCo. to settle 7WTCo.'s claims against IRI, thereby increasing 7WTCo.'s insurance recovery.

3

by calculating the net present value of anticipated cash flows of an identical rebuilt building ($262 million) and subtracting the cost of 7WTCo.'s obligation to rebuild pursuant to the lease ($484 million). With a pre-destruction value of $737 million and a post-destruction value of negative $222 million, Vandell calculated the diminution in the fair market value of the leasehold to be $959 million, plus prejudgment interest.

In addition, 7WTCo. alleges that it suffered consequential damages and personal property losses as a result of Tower 7's destruction. 7WTCo. seeks to recover $80,849,636.82 for re-tenanting costs, $200,883,571.53 for mortgage interest carrying costs, $371,400,000 for lost tenant improvements, $8,052,309.13 for insurance recovery costs and fees, $2,846,139.43 for lost personal property and $307,291.90 for paid insurance premiums.

In total, 7WTCo. alleges that the destruction of Tower 7 caused it to suffer a $959 million diminution in the fair market value of its leasehold and over $600 million in consequential damages and personal property losses and that it is entitled to recover these amounts from Aviation Defendants.

## III. LAW

### a. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the court must view all evidence in the light most favorable to the nonmoving party, Overton v. N.Y. State Div. of Military & Naval Affairs, 373 F.3d 83, 89

(2d Cir. 2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

b. Choice of Law

7WTCo. brought this action pursuant to the Air Transportation Safety and System Stabilization Act, 49 U.S.C. § 40101 note et seq. ("ATSSSA"), which creates a federal cause of action for damages arising from the terrorist-related aircraft crashes of September 11. ATSSSA provides the United States District Court for the Southern District of New York with original and exclusive jurisdiction over such actions, with the substantive law to be "derived from the law, including choice of law principles, of the State in which the crash occurred unless such law is inconsistent with or preempted by Federal law." As neither party has shown New York law to be inconsistent with or preempted by federal law, New York substantive law governs this action.

c. N.Y. C.P.L.R. § 4545

Pursuant to N.Y. C.P.L.R. § 4545, a plaintiff who has been compensated for an economic loss by a collateral source, such as insurance, cannot recover compensation for that economic loss again in tort from the tortfeasor.[6] As the statute provides:

> In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for . . . loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source such as insurance (except for life insurance) . . . . If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of

---

[6] For further analysis of § 4545 and its judicial interpretation, see In re Sept. 11 Litig., 21 MC 101, 2012 WL 3822930, at *3 (S.D.N.Y. Sept. 4, 2012).

such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits.

N.Y. C.P.L.R. § 4545(c) (2008).[7]

"[R]eduction is authorized only when the collateral source payment represents reimbursement for a particular category of loss that corresponds to a category of loss for which damages were awarded," Oden v. Chemung County Indus. Dev. Agency, 87 N.Y.2d 81, 84 (N.Y. 1995), and correspondence must be proven by a "reasonable certainty." N.Y. C.P.L.R. § 4545(c) (2008); Turnbull v. USAir, Inc., 133 F.3d 184, 186 (2d Cir. 1998).

## IV. ANALYSIS

Aviation Defendants move for summary judgment, contending that 7WTCo.'s insurance recovery more than offsets any potential tort recovery by 7WTCo. against Aviation Defendants.[8] 7WTCo. contends that its tort damages exceed its insurance recovery and furthermore that its insurance recovery does not offset Aviation Defendants' potential tort liability because there is not sufficient correspondence between the categories of insurance recovery and the categories of tort damage.

### a. 7WTCo.'s Damages

As I previously held in decisions regarding the destruction of World Trade Center Towers One, Two, Four and Five (together, the "Towers"), "New York courts follow the 'lesser of two' rule: a plaintiff whose property has been injured may recover the lesser of the diminution of the property's market value or its replacement cost." In re Sept. 11 Litig., 590 F.Supp.2d 535,

---

[7] Effective November 12, 2009, § 4545(c) was amended and designated § 4545(a). However, because it was filed prior to November 12, 2009, this action is governed by the earlier version of the statute.
[8] For purposes of this motion, Aviation Defendants accept 7WTCo.'s $737 million valuation of the leasehold immediately prior to the destruction of Tower 7.

6

541 (S.D.N.Y. 2008). The potential tort liability of Aviation Defendants is therefore limited to the diminution in the fair market value of 7WTCo.'s Tower 7 leasehold.[9]

7WTCo. contends that the diminution in the fair market value of the leasehold is $959 million because the cost of the contractually-obligated rebuilding of Tower 7 must be considered in calculating leasehold's post-destruction value. This argument is incorrect as a matter of law because 7WTCo. cannot pass the costs of its contractual obligations onto Aviation Defendants. "When a party commits a tort that results in damage to property, the wronged party may recover damages for injuries which flow directly from that tort and are its natural and probable consequences. The tortfeasor is not responsible for damages which are remote from the wrong or indirectly related to it. Stated differently, the tortfeasor is responsible only for injuries that are the direct, natural and proximate result of the tortfeasor's actions, and that the parties would have foreseen, contemplated or expected." Id. at 543 (citations omitted); In re Sept. 11 Litig., 2009 WL 1181057, at *3 (S.D.N.Y. April 30, 2009) ("Plaintiffs, having lost their argument for replacement value, cannot now argue for the equivalent of replacement value, a negative fair market value that would impose contract obligations of specific performance on [defendants] and their insurers."). The diminution in the fair market value of the leasehold cannot exceed $757 million.[10]

In addition to the diminution in the fair market value of its leasehold, 7WTCo. alleges that it suffered, and seeks to recover for, consequential damages and personal property losses of more than $600 million as a result of Tower 7's destruction. 7WTCo. seeks to recover

---

[9] For purposes of this motion, I assume that the diminution in the fair market value of the leasehold resulting from the destruction of Tower 7 is less than its replacement cost. If it were proven that the replacement cost is in fact the lesser amount, the lesser of two rule would limit Aviation Defendants' potential tort liability to that amount.

[10] For purposes of this motion, I assume that the post-destruction fair market of the leasehold was zero. If it were proven that the post-destruction value exceeded zero, the diminution in the fair market value would be $757 million minus the post-destruction value.

7

$80,849,646.82 in costs incurred tenanting the replacement 7 World Trade Center building, including brokers' commissions, advertising costs, rent concessions and legal fees. However, the cost of tenanting a replacement building is a replacement cost and therefore, as discussed above, its recovery in tort is barred by New York's lesser of two rule. See In re Sept. 11 Litig., 590 F. Supp. 2d at 541.

7WTCo. also seeks to recover $200,883,571.53 in mortgage carrying costs incurred after Tower 7's destruction. However, 7WTCo. would have incurred these costs whether or not Tower 7 had been destroyed and therefore the costs cannot be recovered in tort.

7WTCo. also seeks to recover $371,400,000 in tenant improvements lost due to Tower 7's destruction that the lease requires 7WTCo. to replace.[11] See 7 World Trade Center Lease and Amendment to Lease § 14.1. However, the cost of replacing the destroyed tenant improvements is a replacement cost and therefore, as discussed above, its recovery in tort is barred by New York's lesser of two rule. See In re Sept. 11 Litig., 590 F. Supp. 2d at 541. Furthermore, as discussed above, 7WTCo. cannot pass the costs of its contractual obligations onto Aviation Defendants. Id. at 543.

7WTCo. also seeks to recover $8,052,309.13 in costs and fees incurred in pursuing its insurance claims against IRI. Just as I held with respect to the Towers, Aviation Defendants are not liable in tort for litigation expenses incurred by 7WTCo. in litigation with IRI.[12] In re Sept. 11 Litig., 21 MC 101 (S.D.N.Y. Sept. 30, 2009). Furthermore, Aviation Defendants are not liable in tort for attorneys' fees incurred in preparing and submitting

---

[11] 7WTCo. did not include the value of these improvements in its post-destruction value of the leasehold.

[12] 7WTCo. argues that these expenses are recoverable pursuant to a New York exception to the American Rule on attorneys' fees which provides that "[i]f, through the wrongful act of his present adversary, a person is involved in earlier litigation with a third person in bringing or defending an action to protect his interests, he is entitled to recover the reasonable value of attorneys' fees and other expenses thereby suffered or incurred," Shindler v. Lamb, 211 N.Y.S.2d 762, 765 (N.Y. Sup. Ct. 1959). These expenses do not qualify for this narrow exception, however, because, among other reasons, they are not sufficiently "the natural and necessary consequences of [Aviation Defendants'] acts." Coopers & Lybrand v. Levitt, 52 A.D.2d 493, 496 (N.Y. App. Div. 1976).

insurance claims, but such fees serve to reduce 7WTCo.'s net insurance recovery. Id. I cannot at this time determine what portion of the $8,052,309.13 sought constitutes litigation expenses incurred by 7WTCo. in litigation with IRI versus attorneys' fees incurred by 7WTCo. in preparing and submitting insurance claims. For purposes of this motion, I assume that the entire sum constitutes attorneys' fees incurred by 7WTCo. in preparing and submitting insurance claims and therefore reduces 7WTCo.'s net recovery from IRI as this assumption is most favorable to 7WTCo.'s opposition to Aviation Defendants' motion.

7WTCo. also seeks to recover $2,846,139.43 for items of personal property, including two Frank Stella paintings, lost in Tower 7's destruction. These losses, standing separate from the value of the leasehold and unrelated to the replacement of the leasehold, are properly recoverable in tort.

Finally, 7WTCo. seeks to recover $303,791.73 paid in property insurance premiums and $3,500.17 paid in fine art insurance premiums prior to September 11. Just as I held with respect to the Towers, these are not damages recoverable in tort, although they serve to reduce 7WTCo.'s net insurance recovery.[13] In re Sept. 11 Litig., 21 MC 101 (S.D.N.Y. Sept. 30, 2009).

**b.** Collateral Offset

Aviation Defendants move for summary judgment, contending that 7WTCo.'s insurance recovery more than offsets any potential tort recovery by 7WTCo. against Aviation

---

[13] 7WTCo. contends that it is entitled to recover these insurance premiums even if Aviation Defendants' tort liability is otherwise completely offset because N.Y. C.P.L.R. §4545(c) (2008) "expressly provides that the Court 'shall reduce the amount of the award . . . minus an amount equal to the premiums paid by the plaintiff' to obtain collateral source benefits." However, this argument ignores relevant statutory language: "If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any collateral source, it shall reduce the amount of the award <u>by such finding</u>, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits." N.Y. C.P.L.R. § 4545(c) (2008) (emphasis added).

9

Defendants. 7WTCo. contends that its insurance recovery does not offset Aviation Defendants' potential tort liability because there is not sufficient correspondence between the categories of insurance recovery and the categories of tort damage. [14]

"[R]eduction is authorized only when the collateral source payment represents reimbursement for a particular category of loss that corresponds to a category of loss for which damages were awarded," Oden, 87 N.Y.2d at 84, and correspondence must be proven be a "reasonable certainty." N.Y. C.P.L.R. § 4545(c) (2008); Turnbull, 133 F.3d at 186; see also Kihl v. Pfeffer, 848 N.Y.S.2d 200, 207 (N.Y. App. Div. 2007) (equating "reasonable certainty" standard to the "clear and convincing evidence" standard). "The problem of matching up a collateral source to an item of loss is simply a matter of proof and factual analysis. The burden of establishing the requisite correspondence rests . . . on the party seeking the CPLR 4545(c) offset. Where that burden is not sustained because the connection between the item of loss and the collateral source payment is tenuous or because the necessary correspondence between their essential elements is lacking, the purposes of the statute would not be served by applying the mandatory offset." Oden, 87 N.Y.2d at 89.

Aviation Defendants argue that all of 7WTCo.'s insurance recovery was for replacement costs and business interruption and thus corresponds to Aviation Defendants' potential tort liability. In Fisher v. Qualico Contracting Corp., 98 N.Y.2d 534 (2002), "in a case originating with the negligent destruction by fire of plaintiffs' home," the New York Court of Appeals had to determine "whether a collateral source payment received by plaintiffs from their insurer corresponds to damages payable by defendants so as to require setoff under CPRL 4545(c)." Fisher, 98 N.Y. 2d. at 535. The Court of Appeals held that "replacement cost and

---

[14] 7WTCo. also contends that there must be a damages award by a jury in its favor against Aviation Defendants before I can consider collateral offset. I previously rejected this argument as a matter of law. See e.g., June 5, 2012 Tr. at 7. I propose to discuss with counsel at a forthcoming conference how best to resolve the issues of fact.

10

diminution in market value are simply two sides of the same coin. Each is a proper way to measure lost property value, the lower of the two figures affording full compensation to the owner," and that "[i]n this case, the collateral source payment—the . . . replacement cost insurance proceeds—thus corresponds to [the] property loss, and was properly offset against the damages award." Id. at 540.

However, unlike the plaintiffs in Fisher, 7WTCo.'s insurance recovery was not only compensation for lost property value, but also compensation for 7WTCo.'s contractual obligation to rebuild Tower 7 following its destruction. Because Aviation Defendants are not liable in tort for 7WTCo.'s contractual obligation to rebuild, 7WTCo.'s insurance recovery does not perfectly correspond to Aviation Defendants' potential tort liability.

Yet, 7WTCo.'s replacement cost insurance recovery cannot be completely separated from Aviation Defendants' potential tort liability because replacement of the destroyed Tower 7 with a new building worked to increase the fair market value of Aviation Defendants' leasehold, or, in other words, to compensate 7WTCo. for the diminution in the fair market value of its leasehold resulting from Tower 7's destruction. Aviation Defendants' potential tort liability should therefore be offset by the increase in the fair market value of the leasehold that is attributable to 7WTCo.'s replacement cost insurance recovery. Were such offset not made, 7WTCo. would be afforded double recovery with respect to some portion of the diminution in the fair market value of its leasehold.

These are only some of the issues that must be addressed to determine the correspondence between categories of insurance recovery and categories of tort damage. Because they present issues of material fact requiring trial, I deny Aviation Defendants' motion

for summary judgment. See In re Sept. 11 Litig., 2012 WL 3822930 (Denying Aviation Defendants' collateral offset summary judgment motion with respect to the Towers).

## V. CONCLUSION

For the reasons discussed above, Aviation Defendants' motion for summary judgment is denied. The Clerk shall mark the motion (Doc. No. 205) terminated.

SO ORDERED.

Dated:   December 3, 2012
New York, New York

/s/ ALVIN K. HELLERSTEIN
United States District Judge